UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRUCE W. COX, | } |
| Plaintiff, | } |
| v. | } CASE NO. CV 99-B-1902-S |
| NEW SOUTH FEDERAL SAVINGS BANK f/k/a COLLATERAL MORTGAGE, LTD. and TRANS UNION, | } |
| Defendants. | } |

## MEMORANDUM OPINION

This case is before the court on plaintiff's Motion to Remand. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that the Motion to Remand is due to be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The federal Fair Credit Reporting Act ("FCRA") regulates, *inter alia*, the disclosure and reporting of consumer financial information. Under the FCRA, furnishers of consumer financial information (banks, retail stores, credit card companies, *etc.*) and the consumer reporting agencies that receive and disseminate such information have certain duties and responsibilities. *See* 15 U.S.C. § 1681s-2. Defendant New South Federal Savings Bank ("New South") is a furnisher of consumer information under the FCRA and defendant Trans Union is a consumer reporting agency under the FCRA. (Defs.' Br. in Opp. to Pl.'s Mot. Rem. ("Defs.' Opp.") at 2-3.)

In 1996, Congress amended the FCRA ("1996 Amendments"), to provide an exclusively federal cause of action for violations of 15 U.S.C. § 1681s-2. Specifically, the FCRA states:

> No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . .

15 U.S.C. § 1681t(b)(1)(F).

During the legislative deliberations leading up to the passage of the 1996 Amendments, Representative Kennedy explained his view of the preemptive effect of the amendments:

> In addition, H.R. 1015 gives industry an 8-year Federal preemption of State laws. This compromise provision is the product of a careful effort to balance industry's desire for nationwide uniformity with States' vital interest in protecting their citizens. This has been a contentious issue for quite some time, and has impeded the progress of this bill in the past. I would have preferred that there be no Federal preemption in this bill. Federal law usually sets a floor, not a ceiling, for consumer protection – allowing States to adopt added measures to protect their citizens. Nevertheless, the 8-year preemption mandated by this bill will test the viability of a uniform national standard. If after 8 years the Federal law is not adequately protecting consumers, then I would expect States to step in once again and do the job.

140 Cong. Rec. H9797-05, H9810 (Sept. 27, 1994); 1994 WL 526868.

Similarly, Representative McCandless noted the preemptive effect of the Amendments:

> First, I want to assure Members that the FCRA, as amended by this compromise bill, will be the law of the land for the next 8 years . . . . After 8 years, States will be able to enact tougher laws if they choose to do so.

*Id.*

Finally, Representative Castle acknowledged the uniformity established by the amendments:

> This legislation also recognizes that the credit industry is now a complex, nationwide business. The bill would establish a uniform, national standard for credit reporting for 8 years. This Federal preemption will allow businesses to comply with one law on credit reports rather than a myriad of State laws. This

2

was one of the toughest issues to resolve, but I believe it will benefit consumers and businesses.

*Id.* at H9815; 1994 WL 526868.

The Home Owners' Loan Act, 12 U.S.C. § 1461 *et seq.* ("HOLA") governs the operations of federal saving banks such as New South. Pursuant to HOLA, the Office of Thrift Supervision ("OTS") has issued regulations designed to implement HOLA. One such regulation provides, in relevant part:

> OTS hereby occupies the entire field of lending regulation for federal savings associations . . . . Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities . . . . For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a). This section is followed by examples of state laws which are preempted, including laws that impose requirements on "reports by creditors," "[a]ccess to and use of credit reports" and "[d]isclosure and advertising." *Id.* at §§ 560.2(b)(1), (8) and (9).

On June 9, 1999, plaintiff Bruce Cox ("plaintiff") filed a complaint in Jefferson County (Alabama) Circuit Court alleging that New South and Trans Union violated Alabama common law by committing torts of negligence, intentional interference with contractual relations, defamation, and invasion of privacy, as well as a breach of fiduciary duty. (Compl.) Specifically, plaintiff alleged that New South provided false information to Trans Union regarding a loan New South made to plaintiff, that plaintiff notified both defendants about the false information, and that both defendants failed to correct the false information. (*Id.*)

The negligence count is specifically based on the premise that defendants "have a duty to make certain that all credit information that is either submitted or reported about a consumer is true and accurate." (*Id.* at ¶ 7.) Similarly, the breach of fiduciary duty count is based on the

3

premise that defendants "were entrusted with the fiduciary duty of protecting the interests of the Plaintiff by fairly and accurately reporting and investigating Plaintiff's credit history," and that defendants breached that duty by "fail[ing] and refus[ing] to fairly and accurately report and investigate Plaintiff's credit history." (*Id.* at ¶¶ 41-42.)

Defendants filed a Notice of Removal, and an Amended Notice of Removal, citing additional jurisdictional grounds. Plaintiff then filed a Motion to Remand, requesting this court to remand the case to the Circuit Court of Jefferson County, Alabama.

## II. DISCUSSION

### A.   A Well-Pleaded Complaint

The well-pleaded complaint rule provides that a plaintiff's properly pleaded complaint governs the jurisdictional determination. *BLAB T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)). "A case thus may be removed based on federal question jurisdiction 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." *Id.* (quoting *Mottley*, 211 U.S. at 152).[1] "The presence of a federal defense does not make the case removable, even if the defense is preemption and even if the validity of the preemption defense is the only issue to be resolved in the case." *Id.* (citation omitted). "In short, the plaintiff is the master of the claim and may prevent removal by choosing not to plead an available federal claim." *Id.* (quotations and citation omitted).

---

[1] Under the removal statute, a district court has removal jurisdiction over a civil action brought in state court as long as the district court would have original jurisdiction over the action under either diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a).

There are two independent corollaries to the well-pleaded complaint rule. The first independent corollary is known as the "complete preemption" doctrine. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987); *accord BLAB T.V.*, 182 F.3d at 854. Complete preemption occurs when "the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393 (internal quotation marks and citation omitted). "Because they are recast as federal claims, state law claims that are held to be completely preempted give rise to federal question jurisdiction and thus may provide a basis for removal. *BLAB T.V.*, 182 F.3d at 854 (quotations and citation omitted).

The second independent corollary to the well-pleaded complaint rule is known as the doctrine of "artful pleading." "[A] plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22 (1983). "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion," the court may take jurisdiction over the question. *Rivet v. Regions Bank*, 522 U.S. 470, 475 (1998).

In this case, plaintiff's complaint contains no explicit mention of a federal question. Consequently, defendants seek refuge in the two independent corollaries to the well-pleaded complaint rule. Specifically, defendants contend that (1) two federal statutes, the FCRA and HOLA, completely preempt any and all state law claims, giving rise to federal question jurisdiction; and (2) plaintiff artfully omitted a necessary federal question when pleading his complaint. The court will address these arguments in turn.

5

B.  **Complete Preemption**

Defendants argue that both FCRA and HOLA have such complete preemptive effect that they create federal question jurisdiction sufficient for removal. As noted, normal federal preemption does not create federal question jurisdiction sufficient for removal. *BLAB T.V.*, 182 F.3d at 854 ("The presence of a federal defense does not does not make the case removable, even if the defense is preemption and even if the validity of the preemption defense is the only issue to be resolved in the case."). Thus, this analysis hinges on the presence or absence of complete preemption.

The Supreme Court has found complete preemption in only two statutes, section 301 of the Labor Management Relations Act ("LMRA") and section 502 of the Employee Retirement Income Security Act ("ERISA"). *BLAB T.V.*, 182 F.3d at 855-56. "[A]lthough the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA and ERISA." *Id.* at 856.

Although many other circuits have developed two- and three- part tests for assessing complete preemption arguments, the Eleventh Circuit has chosen a more holistic approach. *Id.* at 855-56. Specifically, the Eleventh Circuit has recently stated:

> [A]ll the tests focus on a similar goal: to determine whether Congress not only intended a given federal statute to provide a federal defense to a state cause of action that could be asserted either in a state or federal court, but also intended to grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal one.

*Id.* at 857 (internal quotations, alterations and citation omitted). "The complete preemption analysis thus focuses primarily upon evaluating Congress's intent, which is the 'touchstone' of

federal court removal jurisdiction." *Id.* (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987).

The Supreme Court has provided explicit guidance of the type of Congressional statements and history that manifest Congress's intent to give a statute complete preemptive effect. In *Metropolitan Life*, the Court examined the ERISA legislative history for statements regarding complete preemption. *Metropolitan Life*, 481 U.S. at 65-67. First, the Court turned to the Conference Report on ERISA, which stated "suits to enforce benefit rights . . . or to recover benefits . . . *are to be regarded as arising under the laws of the United States in a similar fashion to those brought under section 301 of the Labor Management Relations Act of 1947."* *Id.* at 65-66 (emphasis in original) (quoting H.R. Conf. Rep. No. 93-1280, p. 327 (1974)).

Second, the Court relied on the pronouncement of ERISA sponsor Senator Williams that "[i]t is intended that such actions will be regarded as arising under the laws of the United States, in similar fashion to those brought under section 301 of the Labor Management Relations Act." *Id.* at 66 (quoting 120 Cong. Rec. 29933 (1974)). Thus, the *Metropolitan Life* Court concluded that a suit involving ERISA plan benefits "is necessarily federal in character by virtue of the clearly manifested intent of Congress." *Id.* at 67.

### 1. FCRA

In this case, defendants rely on the statements by Representatives Kennedy, McCandless, and Castle that the 1996 Amendments to the FCRA provide for an eight-year federal preemption of state laws in order to promote national uniformity in the area of consumer credit reporting. 140 Cong. Rec. H9797-05, H9810, H9815 (Sept. 27, 1994); 1994 WL 526868. Defendants contend that such statements are evidence that Congress not only intended the FCRA to provide a federal defense to a state cause of action, but also intended to grant defendants the ability to

7

remove the cause of action to a federal court by transforming the state cause of action into a federal one. For several reasons, the court disagrees.

First, on their face, the statements by Representatives Kennedy, McCandless, and Castle fall far short of the "clearly manifested intent" set forth in the ERISA legislative history relied upon by the Supreme Court in *Metropolitan Life*. *See Metropolitan Life*, 481 U.S. at 65-67. Specifically, the FCRA legislative history contains no statement that state claims relating to credit reports "are to be regarded as arising under the laws of the United States." *See id.* at 65. Moreover, the FCRA legislative history does not contain comparisons to either section 502 of ERISA or section 301 of the LMRA. *See id.* In short, the statements of Representatives Kennedy, McCandless or Castle are indicative of nothing more than an intent to provide a defense of normal federal preemption.

Second, when Congress was considering the 1996 Amendments, *Metropolitan Life* had been the law of the land for at least eight years. Congress, therefore, was on notice of the type of "clearly manifested intent" necessary to create complete preemption. Defendants, however, have not put forth any legislative history that contains the type of language manifesting such intent. Consequently, the court is of the opinion that Congress did not intend to give FCRA such complete preemptive effect.

Third, almost all the courts that have addressed the issue have found that the FCRA does not have complete preemptive effect. *See Savage v. Cross Country Bank*, No. 99-N-1590-S, slip op. at 8-9 (N.D. Ala. Sept. 1, 1999) (unpublished); *Rule v. Ford Receivables*, 36 F. Supp.2d 335 (S.D.W.V. 1999); *Swecker v. Trans Union Corp.*, 31 F. Supp.2d 536 (E.D. Va. 1998); *Sherron v. Private Issue by Discover*, 977 F. Supp. 804 (N.D. Miss. 1997); *Harper v. TRW, Inc.*, 881 F. Supp. 294 (E.D. Mich. 1995). *But see Williams v. Metropolitan Life Ins. Co.*, 1994 WL 529880

8

(S.D.N.Y. Sept. 28, 1994) (taking jurisdiction over state law claims apparently based on the normal preemptive effect of the FCRA). Four of these cases were decided after the 1996 Amendments were enacted. Although the cases do not directly address the legislative history of the amendments, they are nonetheless persuasive authority that the FCRA, as amended, is not completely preemptive.

All of the legislative history and judicial precedent regarding the FCRA, as amended, compel the conclusion that Congress intended the statute to have normal preemptive effect, not complete preemptive effect.[2] Consequently, the court is of the opinion that Congress, when passing the 1996 Amendments, did not intend to "grant a defendant the ability to remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal one." See *BLAB T.V.*, 182 F.3d at 857.

2. **HOLA**

Defendants also contend that through the HOLA regulation issued by the OTS, the OTS "occupies the entire field of lending regulation," completely preempting state law claims against New South. 12 C.F.R. § 560.2(a). For several reasons, the court disagrees.

First, as with the FCRA legislative history, the OTS regulation does not meet the standards set forth in *Metropolitan Life*, 481 U.S. 65-67. Consequently, there is no "clearly manifested intent of Congress" to create complete preemption. At best, the regulation at issue raises the specter of normal federal preemption, an affirmative defense insufficient to create federal question jurisdiction in a removal context. *BLAB T.V.*, 182 F. 3d at 854.

---

[2]The court makes no judgment as to whether plaintiff's claims are indeed preempted. That decision is left to the state court.

Second, as the Eleventh Circuit recently noted, courts have not used the OTS regulation to declare HOLA completely preemptive. *See Federal Deposit Insurance Corp. v. Stahl*, 89 F.3d 1510, 1515 (11th Cir. 1996) ("courts have not found that federal law occupies the entire field in the regulation of federal thrifts under HOLA").

Third, defendants have submitted no authority for the proposition that Congress can delegate to a regulatory agency the power to manifest complete preemptive intent. It is clear that in cases of normal federal preemption, Congress can delegate preemptive intent. *Teper v. Miller*, 82 F.3d 989, 998 (11th Cir. 1996) (quoting *City of New York v. FCC*, 486 U.S. 57 (1988)); *see generally* Jack W. Campbell IV, Regulatory Preemption in the Garcia/Chevron Era, 59 U. Pitt. L. Rev. 805 (1998). Absent any controlling authority, however, this court is unwilling to hold that a regulatory agency can declare complete preemption.

Therefore, the court is of the opinion that the OTS regulation does not create complete preemption, and defendants cannot rely on it to "remove the adjudication of the cause of action to a federal court by transforming the state cause of action into a federal one." *BLAB T.V.*, 182 F.3d at 857.

**C.     Artful Pleading**

Defendants contend that under Alabama law, there is no fiduciary duty between banks and consumers. Consequently, defendants argue that the breach of duty upon which the negligence count rests must be a breach of the duties imposed on the defendants by the FCRA. Therefore, since the duty stems from a federal law, defendants conclude that plaintiff has omitted a necessary federal question from his complaint, implicating the "artful pleading" corollary to the well-pleaded complaint rule.

As noted, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd.*, 463 U.S. at 22. "If a court concludes that a plaintiff has 'artfully pleaded' claims in this fashion, it may uphold removal even though no federal question appears on the face of plaintiff's complaint. The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim." *Rivet*, 522 U.S. at 475.

Defendants contend that in order to determine the propriety of defendants' actions, the court must interpret 15 U.S.C. § 1681s-2(a). The court agrees. "*Franchise Tax Board*, however, did not purport to disturb the long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813; *accord Jairath v. Dyer*, 154 F. 3d 1280, 1284 n.11 (11th Cir.1998). Thus, the mere fact that the FCRA duty is a necessary element in settling plaintiff's state law claim does not automatically confer federal question jurisdiction. *See Merrell Dow*, 478 U.S. at 813-15; *City of Huntsville*, 24 F.3d at 174.

In *Jaraith v. Dyer*, the court, relying on *Merrell Dow*, held that because the ADA did not provide a private damages remedy for the type of ADA violation at issue,[3] "the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Jairath*, 154 F.3d at 1284. The Eleventh Circuit has further concluded that "it will be only the exceptional federal statute that does not provide for a private remedy but still raises a federal question substantial enough to confer

---

[3]*Jairath* involved an alleged violation of Title III of the ADA, which governs disability discrimination in public accommodations. Unlike Title I of the ADA (governing workplace discrimination), Title III provides only injunctive relief, severely limiting the ability of aggrieved individuals to bring private causes of action. *Jairath*, 154 F. 3d at 1283-84.

11

federal question jurisdiction when it is an element of a state cause of action." *City of Huntsville,* 24 F.3d at 174.

Consumer reporting agencies and users of consumer reports are subject to civil liability for willful or negligent violations of the FCRA. *See* 15 U.S.C. §§ 1681n, 1681o. However, the FCRA limits enforcement of subsection 1681s-2(a) exclusively to federal and/or state officers. *See* 15 U.S.C. § 1681s-2(d); *see also Carney v. Experian Information Solutions, Inc.,* 57 F.Supp.2d 496, 502 (W.D. Tenn. 1999). Further, "liability for violations of § 1681s-2 are limited, and the provisions for civil liability set forth in 15 U.S.C. §§ 1681n and 1681o do not apply to any violation of § 1681s-2." *Carney,* 57 F.Supp.2d at 502 (citing 15 U.S.C. § 1681s-2(c)). Thus, plaintiff has no private right of action under the federal statute implicated by his claims. The court is of the opinion that this is not "the exceptional federal statute" referred to in the *City of Huntsville* case, 24 F. 3d at 174. Therefore, federal jurisdiction does not lie.

### D.    Conclusion

Because the complete preemption doctrine is one of narrow application and because the FCRA's and HOLA's language and history do not manifest an intent to convert state law claims into federal claims on removal, neither statute has such complete preemptive effect that it creates federal question jurisdiction sufficient for removal. Further, neither the alleged presence of normal preemption defenses under the FCRA and HOLA, nor the alleged presence of an FCRA duty in the negligence claim renders this case as one "arising under the Constitution, laws, or treaties of the United States" for purposes of original subject matter jurisdiction. 28 U.S.C. § 1331.

Plaintiff's complaint does not present claims arising under federal law. Because the court would not have original jurisdiction, it does not have removal jurisdiction. *See* 28 U.S.C. §

1441(a). Consequently, the court is of the opinion that the plaintiff's Motion to Remand is due to be granted.

An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this __29th__ day of September, 2000.

_Sharon Lovelace Blackburn_
**SHARON LOVELACE BLACKBURN**
United States District Judge

13